WILKINSON, SIEGEL AND DOGOLOFF
*v.* ATKINSON

[No. 273, September Term, 1965.]

*Decided April 13, 1966.*

The cause was submitted to HORNEY, MARBURY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

Submitted on brief by *John J. Bishop, Jr., Harry S. Swartz-welder, Jr.* and *Francis X. Pugh* for appellants.

Submitted on brief by *Ernest C. Trimble* for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The only question in this zoning appeal is whether the appellant, Dorothy E. Siegel, is an aggrieved party. The appellee, Joseph A. Atkinson, sought zoning reclassification of two parcels of land in Baltimore County from an R-6 Zone (Residence, one and two-family) to an R-A Zone (Residence, apartment). The two parcels are divided by the Baltimore County Beltway and in the zoning petition were designated as parcel "A" (on the west side of the Beltway) and parcel "B" (on the east side). The appellant, Mrs. Siegel, and others appeared as protestants at a hearing before the Baltimore County Board of Appeals. The Board denied the reclassification as to parcel "B" and granted it as to parcel "A". Mrs. Siegel and two other protestants appealed to the Circuit Court for Baltimore County from the granting of the application as to parcel "A". The appellee filed a petition to intervene and a motion to dismiss the appeal on the ground that Mrs. Siegel and the two other protestants were not aggrieved parties. Judge Menchine permitted additional testimony to be taken before the court on the question of whether Mrs. Siegel was an aggrieved

person within the meaning of Section 604 of the Baltimore County Charter. Thereafter, the Judge, in an able and comprehensive opinion, concluded that Mrs. Siegel was not an aggrieved person and granted the motion to dismiss. Mrs. Siegel is the sole remaining appellant.

In *DuBay v. Crane,* 240 Md. 180, 183, 213 A. 2d 487 (1965), Judge Horney, for the Court, said:

> "Prior to 1960, in Baltimore County, any aggrieved party or *taxpayer* could maintain an appeal, but it is now necessary to be both a party to the proceeding before the board of appeals and a 'person aggrieved' by its decision in order to appeal to the circuit court. This, in addition to showing the proximity of one property to the other, requires proof of the adverse effect the changed status of the rezoned property has, or could have, on the use, enjoyment and value of the property of the protestant in order to establish the status of the appellant as an aggrieved person."

Mrs. Siegel concededly was a party to the proceeding before the Board. On the general rule as to whether a person is "aggrieved" by the Board's decision in order to have standing under the Charter to appeal to the Circuit Court, Judge Horney said in *DuBay,* at 185:

> "In zoning cases, the rule in this State is that for a person to be aggrieved by an adverse decision of the administrative agency, and thus entitled to appeal to the courts, the decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specifically affected in a way different from that suffered by the public generally." [Citing cases].

In the testimony before Judge Menchine, Mrs. Siegel stated that she and her husband are the owners of property not less than seven hundred and fifty feet distant in a direct line from the reclassified property. The distance by one road is one and one-tenth miles by one route and seven-tenths of a mile by an-

other road. The Siegel property is separated from the reclassified property by other properties and by the Baltimore County Beltway.

Mrs. Siegel testified that she could see the reclassified property from her home; the Siegel house is on the highest elevated point of the development in which she lives and Mrs. Siegel can see directly over the Beltway and view the property across it. She testified further that the view from her house would be very much affected if the landscape becomes populated with apartment houses; that when she and her husband bought their house, over six and a half years before, they anticipated, according to the zoning, a continuation of the type of community which had already been developed. She thought the erection of an apartment complex, which could be seen from her house, would have an adverse effect upon the resale value of her property. There is an apartment complex on the east side of the Beltway where the Siegels live, but this complex is not visible from their home. She felt that the granting of the application would constitute a drastic change in the type of neighborhood and that there would probably be many more changes based thereon.

That Mrs. Siegel feared the granting of the reclassification would lead to a general apartment development in the residential area, of itself, is not enough to show she had such an interest in the subject matter as bestowed on her standing to attack the Board's decision. *DuBay, supra; City of Greenbelt v. Jaeger,* 237 Md. 456, 206 A. 2d 694 (1965). Her testimony that the access road to the reclassified property has no sidewalks and that the expected increased traffic would create a hazard to her children and other children who take this route to school does not give her the requisite standing; the inconvenience feared is one likely to be suffered by any member of the public. *Marcus v. Montgomery County Council,* 235 Md. 535, 541, 201 A. 2d 777 (1964). There was no specific testimony as to any adverse effect upon the value of the Siegel home. See e.g. *Richmark Realty Co. v. Whittlif,* 226 Md. 273, 281-82, 173 A. 2d 196 (1961).

We agree with Judge Menchine that the only circumstance which could be considered as bringing Mrs. Siegel within the

category of an aggrieved party is that she can see the reclassified property from her house, and that, on the facts, this is not sufficient. The Siegel property is on the opposite side of the Beltway, and, in *DuBay,* we pointed out at 185-86, the Beltway "if not a complete shield against the apartments to be constructed, will serve as an adequate barrier." It is true that, in that case, the property was 1500 feet from the rezoned property, and it was not shown that DuBay could see the reclassified property from his home, but it was the existence of the broad, heavily traveled intervening Beltway which was the determining factor. See *Woodlawn Citizens Ass'n, Inc. v. Board of County Commr's for Prince George's County,* 241 Md. 187, 198-200, 216 A. 2d 149 (1966), and cases therein cited.

Visibility is one of the elements of proximity, and, as Judge Menchine noted, has been referred to as one of the factors giving rise to standing. E.g., *Marcus, supra; Pressman v. Mayor and City Council of Baltimore,* 222 Md. 330, 160 A. 2d 379 (1960), and *Cassel v. Mayor and City Council of Baltimore,* 195 Md. 348, 73 A. 2d 486 (1950). Of itself, however, where, as here, the visibility is only across a broad beltway, and there is no probative evidence of any other specific interest or damage to the use or value of the protestant's property, mere visibility is not enough to give the requisite standing.

*Judgment affirmed; costs to be paid by appellant.*