79 A.3d 976

Steve BELL et al.

v.

ANNE ARUNDEL COUNTY, MARYLAND et al.

No. 273, Sept. Term, 2012.

Court of Special Appeals of Maryland.

Nov. 20, 2013.

162

164

G. Macy Nelson (David S. Lynch, Law Office of G. Macy Nelson, on the brief), Towson, MD, for appellant.

Mark F. Gabler (Rich and Henderson, PC, on the brief), Gregory J. Swain (David A. Plymyer, Acting County Atty., on the brief), Annapolis, MD, for appellee.

Panel: ZARNOCH, GRAEFF, KEHOE, JJ.

KEHOE, J.

This is an appeal from a judgment of the Circuit Court for Anne Arundel County dismissing with prejudice a challenge to a 2011 comprehensive rezoning ordinance. The appellants [1] are property owners and community associations asserting

---

1. Appellants are: Stephen Bell, William Chapin, Maria Murphy, Leslie Dolan, Sharon Miles, Rosie Shorter, Sandra Bowie, Robert Smith,

that the rezoning ordinance is invalid as to certain properties. The appellees are the County and some of the affected property owners.[2] In granting appellees' motions for summary judgment, the circuit court concluded that appellants did not have standing to bring a challenge and that appellants had failed to join all necessary parties to the litigation.

We see the case differently. We conclude that, in light of recent decisions by this Court and the Court of Appeals,[3] some of the appellants were presumptively aggrieved by the rezoning ordinance, and that these presumptions were unrebutted on the record before the circuit court. We agree with the circuit court that appellants failed to join all necessary parties but, under the circumstances, the proper step was to give appellants an opportunity to join all necessary parties. We will vacate the court's judgment and remand this case for further proceedings.

## BACKGROUND

As a charter county, Anne Arundel County is required to review and revise its comprehensive plan and its zoning ordinance on a periodic basis. *See* Md. Code (2012) Land Use Article ("LU") §§ 1–416 and 1–417.[4] Section 18–2–106(b)(1) of the Anne Arundel County Code (the "Code") authorizes the County Council to amend its zoning map—called the Digital Zoning Layer—by comprehensive zoning legislation.

---

Jerry Ballman, Crofton First, Inc., the Patuxent Riverkeeper, Canter Farms Home Owners Association, Inc., and the Greater Crofton Council, Inc.

2. The remaining appellees are BBSS, Inc., Wach, L.L.C., Towser Developers, Inc., and South Shores Development Company, Inc.

3. Specifically, *120 West Fayette St., LLLP v. Mayor and City Council of Baltimore*, 407 Md. 253, 964 A.2d 662 (2009); and *Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 205 Md.App. 636, 688, 46 A.3d 473 (2012), *aff'd on other grounds*, 432 Md. 292, 324, 68 A.3d 843 (2013). We will discuss these later in this opinion.

4. While this case was pending before this Court, § 1–416 was amended to require the planning commission to review the comprehensive plan every 10 years. *See* Acts of 2013, Chps. 520 and 521.

On February 22, 2011, Bill No 12–11 was introduced before the Anne Arundel County Council. The bill proposed a comprehensive rezoning of Councilmanic Districts I and IV in Anne Arundel County. During the public hearing process, the County Council considered numerous proposed amendments and eventually adopted Bill 12–11 as amended. Bill No. 12–11 repealed and reenacted the zoning classifications for 59,045 individual parcels of land located in the two Districts and changed the zoning classifications of 264 of those parcels.

Bill No. 12–11 included Amendment 25, which, among other changes, reclassified Tax Map 36 Parcels 69 and 200 from open space and low density residential uses to a more intensive residential classification. Appellants take issue with this rezoning. Appellee BBSS is the owner of Parcels 69 and 200. Appellants also challenge two proposals contained in the original bill which changed the zoning classifications of Tax Map 36, Parcels 114 and 141. Parcel 114 was reclassified from a lower density residential zone to one allowing commercial offices and similar uses. This parcel is owned by Baldwin Enterprises, Inc., who is not a party to this action.[5] Likewise, Parcel 141 was reclassified from a residential zone to a commercial office district. Parcel 141 is owned by appellee Southern Shores Development Company.

Of the appellants, only Stephen Bell, William Chapin, and Rosie Shorter own land in reasonable proximity to any of these parcels. Shorter owns residential property that abuts Parcels 69 and 200. Chapin owns residential property located approximately 100 feet from Parcel 141 and 500 feet from Parcel 114. Bell owns residential property situated approximately 80 feet from Parcel 141 and 500 feet from Parcel 114.

### The Proceedings Before the Circuit Court

Appellants first filed a petition for judicial review, or, in the alternative, for a writ of mandamus, in the Circuit Court for

---

**5.** But, as explained *infra,* appellants claim that Baldwin Enterprises is somehow related to or affiliated with BBSS.

Anne Arundel County, challenging the legality of the County's enactment of Bill No. 12–11. After a round of dismissal motions and a hearing, the circuit court dismissed the petition for lack of jurisdiction.

Appellants then filed a complaint for declaratory relief against the County, alleging that it had "failed to provide the public with the required notice of the proposed zoning changes," and, further, that the rezoning of Parcels 114, 141, 69 and 200 constituted illegal spot zoning and illegal contract zoning.[6]

In response, appellees BBSS, Wach, Towser Developers, and South Shores Development Company—the owners of Parcels 69, 200, and 141—as well as BWI Technology Park Phase III, L.L.C., United Properties, L.L.P., Sincaltom Associates, and David Callahan all moved to intervene in the suit. The circuit court granted the motion.

On September 26, 2011, the County moved to dismiss the complaint, contending that there was no justiciable controversy before the court, that appellants lacked standing to bring an action for declaratory relief challenging Bill No. 12–11, and that, alternatively, appellants had failed to exhaust the administrative remedies available to them under the County Code. The remaining appellees filed motions to dismiss asserting that appellants lacked standing and had failed to join all necessary parties.

On March 5, 2012, a hearing was held on the motions to dismiss. At the hearing, although appellants contested most of the appellees' contentions, they agreed to drop their allegation that Bill No. 12–11 had been enacted without the requisite public notice. As a result, interveners BWI Technology Park Phase III, L.L.C., United Properties, L.L.P., Sincaltom Associates, and David Callahan withdrew from the case, leaving only the appellees as defendants.

---

6. In their complaint, appellants also took issue with the rezoning of another parcel owned by BBSS, Tax Map 36, Parcel 61. On appeal, they do not assert that any of them were aggrieved by that rezoning.

On March 27, 2012, the circuit court issued a memorandum opinion and order granting the motions to dismiss. In its opinion, the court first determined that appellants had failed to join all necessary parties, stating, in pertinent part, (emphasis in original):

It is clear from the proceedings in this case that Plaintiffs have failed to join all parties who may be affected by Bill No. 12–11. As stipulated between the parties at the March 5, 2012 hearing, over two-hundred and sixty (260) distinct parcels of land are affected through the implementation of Bill No. 12–11. The status of these properties clearly *may be* affected by the rezoning scheme of the bill. . . . In the initial complaint, Plaintiffs failed to name all owners of the over two-hundred sixty (260) parcels that *may* potentially be affected by Bill No. 12–11. As such Plaintiffs have failed to join necessary and indispensable parties in violation of Md. Rule 2–211 and Md.Code Ann. Cts. & Jud. Proc. § 3–405(a)(2).

The court additionally concluded that appellants lacked standing to pursue the declaratory relief sought. The court divided its standings analysis into two sub-parts: 1) whether appellants had *prima facie* standing, and 2) whether appellants had standing based on affected personal or property rights—i.e., whether they had been specially aggrieved. As to the first question, the circuit court reasoned (footnote omitted):

One means of establishing *a prima facie* case of aggrievement in Maryland is to be an adjoining, confronting or nearby property owner. [*120 West Fayette St., LLLP v. Mayor and City Council of Baltimore,* 407 Md. 253, 271, 964 A.2d 662 (2009).] Property owners that are precisely abutting the subject property and within sight and sound of the property at issue have standing as an aggrieved party on judicial review. *Bryniarski v. Montgomery County Board of Appeals,* 247 Md. 137, 147, 230 A.2d 289 (1967).

There is not a single reported case in Maryland where a party in a declaratory judgment action has been found to have *prima facie* aggrievement or standing to challenge

comprehensive rezoning legislation based on ownership of property nearby or in proximity to property that was rezoned. The only potential allegation made by Plaintiffs to claim standing based on proximity is that "noise is a primary concern for Plaintiffs who live in close proximity to the land subject to Proposal 4–4 and 4–12." The mere rezoning of the property located near Plaintiffs' property will not immediately cause additional noise. Before development may occur on any of the property affected by Bill No. 12–11, numerous permits and approvals must be obtained from the County and the State. Plaintiffs will have the opportunity to challenge any future development at the required development review proceedings. Because Plaintiffs have failed to show that they are *prima facie* aggrieved by the rezoning itself and because there will be additional opportunities for Plaintiffs to voice their concerns over noise should development occur on the land affected by Bill No. 12–11, Plaintiffs do not have *prima facie* standing to challenge the comprehensive rezoning scheme through a declaratory judgment action.

On the question of whether appellants had been specially aggrieved, the court concluded that:

An aggrieved party may establish standing if it can be shown that 1) the aggrieved person's personal or property rights are specially and adversely affected by the land use decision and 2) that the aggrieved person is personally and specifically affected in a way that is different from what is suffered by the general public. *Bryniarski,* 247 Md. at 144–145 [230 A.2d 289]. In their complaints, Plaintiffs cite increased traffic, potential property value decrease and change in character to the surrounding neighborhood as means to achieve standing through special aggrievement.

With regard to increased traffic, Maryland Courts have held that a potential increase in traffic flow does not qualify a person for special aggrievement. "Even if increased traffic would turn out to be a problem, it would be a general problem and not a problem special to appellant." *Benn Ray et al. v. Mayor & City Council of Baltimore et al.* [203

Md.App. 15, 42, 36 A.3d 521 (2012), *aff'd* 430 Md. 74, 59 A.3d 545 (2013) ]. The law is clear that expected increased traffic does not give the requisite standing needed as the inconvenience feared is one likely to be suffered by any member of the public. *Wilkinson v. Atkinson*, 242 Md. [231, 234, 218 A.2d 503 (1966) ].

In their affidavits, Plaintiffs Rosie Shorter, William Chapin and Stephen Bell all claim that that Bill No. 12–11's reclassification of the subject properties will negatively affect their respective property values. Plaintiffs argue that the presupposition of a decrease in property value is sufficient to give them standing in seeking declaratory judgment.... The potential impact of the construction on property values is not "personally and specifically different from that suffered by the public generally." *Bryniarski*, 247 Md. at 144 [230 A.2d 289]. Therefore, Plaintiffs do not qualify as aggrieved parties by claiming that property values may diminish as a result of future hypothetical construction. The aggrievement is not specific enough to the individuals. *Benn Ray et al. v. Mayor & City Council of Baltimore et al.*, [203 Md.App. 15, 36 A.3d 521 (2012), *aff'd*, 430 Md. 74, 59 A.3d 545 (2013) ].

Finally, Plaintiffs argue that they have standing because the character of the neighborhood may be changed as a result of the comprehensive rezoning scheme.... In *White v. Major Realty*, 251 Md. [63, 64, 246 A.2d 249 (1968) ], the Plaintiff claimed, inter alia, that the zoning changes under consideration would "change the entire character of our community." The Court of Appeals rejected the claim and stated that the appellants did not establish the necessary special damage to their property (an adverse effect different from that suffered by the public generally) to make them aggrieved. In this case it is apparent that a potential change in community is not sufficient to show personal and specific aggrievement. Therefore, the Court fails to find that Plaintiffs' interests in the matter are any different than the interests of a member of the general public. Plaintiffs

do not have standing to bring a claim based on potential change in the character of the neighborhood.

Accordingly, the circuit court dismissed the complaint with prejudice and this appeal followed.

## DISCUSSION

■ The motions to dismiss filed in this case included matters outside the four corners of the complaint and its exhibits. We will therefore treat the motions as motions for summary judgment. Md. Rule 2–322(c).[7] As the Court of Appeals explained in *D'Aoust v. Diamond*, 424 Md. 549, 36 A.3d 941 (2012):

> We have interpreted this Rule to mean that "[w]hen a party presents factual matters outside the pleadings, and the [trial judge] does not exclude them from consideration in the course of acting on a facial motion to dismiss, the [trial judge] must treat the motion as a motion for summary judgment." If a trial judge has been presented with facts or allegations outside of those in the complaint and has not specifically excluded them from consideration, we have acted on the presumption that the additional information was considered by the trial judge.

*Id.* at 573, 36 A.3d 941 (quoting *Dual, Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 161, 857 A.2d 1095 (2004)).

Where, as here, there are no factual disputes at issue, an appellate court reviews a circuit court's grant of summary judgment *de novo* to determine whether the circuit court was legally correct. *Harford County v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73, 82, 923 A.2d 1 (2007); *Lombardi v. Montgom-*

---

7. Md. Rule 2–322(c) states in pertinent part:
 If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

*ery County,* 108 Md.App. 695, 710, 673 A.2d 762 (1996); Md. Rule 2–501.

## I. *Prima Facie* Aggrievement

█ Appellants first assert that they "have standing because [Shorter, Chapin, and Bell] are all *prima facie* aggrieved based on their proximity to [Parcels 69, 200, 114, and 141]"—specifically, because Shorter's property abuts Parcels 69 and 200, and because Chapin's and Bell's properties are located in close proximity to Parcels 114 and 141. In support of this proposition, appellants cite to three Maryland appellate decisions: *Bryniarski v. Montgomery County,* 247 Md. 137, 230 A.2d 289 (1967); *120 West Fayette St., LLLP v. Mayor and City Council of Baltimore,* 407 Md. 253, 964 A.2d 662 (2009); and *Long Green Valley Ass'n v. Bellevale Farms, Inc.,* 205 Md.App. 636, 688, 46 A.3d 473 (2012), *aff'd on other grounds,* 432 Md. 292, 324, 68 A.3d 843 (2013).[8]

Appellants rely on the following passage in *Bryniarski,* wherein the Court of Appeals explained the concept of *prima facie* aggrievement as follows: "An adjoining, confronting or nearby property owner is deemed, *prima facie,* to be specially damaged and, therefore, a person aggrieved. . . ." *Bryniarski,* 247 Md. at 145, 230 A.2d 289 (internal citations omitted). In appellants' view, because Shorter, Chapin, and Bell are either "adjoining, confronting, or nearby property owner[s]" to land rezoned by Bill No. 12–11, they are *prima facie* aggrieved and, thus, have standing to challenge the bill. Although we agree with appellants' ultimate conclusion, the path to this result is more arduous than they suggest.

The above-quoted passage is contained within the *Bryniarski* Court's discussion of aggrievement in the context of an appeal of a decision of a local administrative agency acting in a quasi-judicial capacity, specifically, whether to grant an application for a special exception. *Id.* at 141–42, 230 A.2d 289. In

---

8. The Court of Appeals' opinion in *Long Green Valley* did not address the issue of standing.

such circumstances, the *Bryniarski* Court articulated the following test:

In cases involving appeals under the provisions of a zoning ordinance:

(a) It is sufficient if the facts constituting aggrievement appear in the petition for appeal either by express allegation or by necessary implication.

(b) *An adjoining, confronting or nearby property owner is deemed, prima facie, to be specially damaged and, therefore, a person aggrieved.* The person challenging the fact of aggrievement has the burden of denying such damage in his answer to the petition for appeal and of coming forward with evidence to establish that the petitioner is not, in fact, aggrieved.

(c) A person whose property is far removed from the subject property ordinarily will not be considered a person aggrieved. But he will be considered a person aggrieved if he meets the burden of alleging and proving by competent evidence—either before the board or in the court on appeal if his standing is challenged—the fact that his personal or property rights are specially and adversely affected by the board's action.

*Id.* at 144–45, 230 A.2d 289 (numbering removed, citations omitted, emphasis added).

In enacting Bill No. 12–11, the County Council acted in a legislative, as opposed to a quasi-judicial capacity. *See Mayor and Council of Rockville v. Rylyns Enterprises, Inc.*, 372 Md. 514, 532, 814 A.2d 469 (2002) (citing, among other authorities, *Montgomery County v. Woodward & Lothrop, Inc.*, 280 Md. 686, 711–13, 376 A.2d 483 (1977)). Appellants have challenged the legality of the ordinance by bringing the instant suit for declaratory relief. The *Bryniarski* Court laid out a separate test applicable in such circumstances. As the Court explained:

There is a distinction between the degree of certainty of allegations and proof of aggrievement in cases in equity and in cases involving a petition for a writ of mandamus on one

hand, and in statutory appeals from the board to the original court of record on the other.

(a) When the suit is in equity and a declaration nullifying a zoning ordinance for constitutional or other reasons is sought, *the allegations by the plaintiff of how he is specially damaged by the zoning ordinance must be definite, and he must meet the burden of showing such special damage by competent evidence.*

(b) In a mandamus action the same rule is applicable.

247 Md. at 144, 230 A.2d 289 (numbering removed, internal citations omitted, emphasis added).

Thus, under *Bryniarski,* the concept of *prima facie* aggrievement assists litigants only in judicial reviews of decisions of a zoning agency acting in a quasi-judicial capacity. Were we to apply this rule in the instant case, *Bryniarski* suggests that Shorter, Chapin, and Bell, having brought a declaratory judgment action, could not attain standing as *prima facie* aggrieved parties based solely on the proximity of their properties to Parcels 69, 200, 114, and 141.

Appellants, however, argue that the Court of Appeals' decision in *120 West Fayette St.* and this Court's decision in *Long Green Valley* "extend [*prima facie* aggrievement principles] beyond the judicial review arena to[ ] other challenges of land-use regulations." We turn to this contention.

In *120 West Fayette St.,* the plaintiff filed a complaint in equity seeking a declaration that a land disposition agreement entered into by Baltimore City violated the City's Charter and other applicable laws. The circuit court dismissed the complaint on the ground that plaintiff lacked standing to challenge the agreement. In reversing this decision, the Court of Appeals held, first, that the plaintiff had "taxpayer standing," 407 Md. at 268–69, 964 A.2d 662, and alternatively, that the plaintiff had "property owner standing" under *Bryniarski. Id.* at 273, 964 A.2d 662. In making this latter determination, the Court explained (emphasis added):

Under Maryland common law principles if an individual ... is seeking to redress a public wrong ... that individual

has no standing in court unless the individual has also suffered some kind of special damage from such wrong differing in character and kind from that suffered by the general public. This common law requirement of personal and specific damage or "aggrievement" is embodied in Maryland's statutory Zoning laws. *Generally, one is deemed "aggrieved" if he, she, or it can demonstrate that the land use decision will adversely affect his, her, or its interest, and that such interest is personal or specific, and not shared by the general public.*

Moreover, in actions for judicial review of administrative land use decisions an adjoining, confronting or nearby property owner is deemed, *prima facie* . . . a person aggrieved. The person or entity challenging the fact of aggrievement has the burden of denying such damage in his or her answer . . . and of coming forward with evidence to rebut the presumption of aggrievement. Such property owners are granted *prima facie* aggrieved status due to the sheer proximity of their property to the area that is the subject of the complaint.

*Because land use . . . is at least one of the prime considerations with which an urban renewal plan is reasonably sure to be concerned, we conclude that the principles that confer standing upon an adjoining, confronting or neighboring property owner to seek judicial review of land use decisions, logically extend to an adjoining, confronting, or neighboring property owner that is challenging a municipalities' allegedly illegal avoidance of urban renewal and procurement ordinances.*

*Id.* at 270–72, 964 A.2d 662 (internal quotation marks, brackets, and citations omitted).

Several aspects of the Court's standing analysis in *120 West Fayette* support its application in the present case. First, as in the present case, *120 West Fayette* involved a declaratory judgment action challenging a legislative action, as opposed to a quasi-judicial administrative decision. Second, the Court in *120 West Fayette* applied the *Bryniarski prima facie* aggrievement standard to the facts before it, concluding that the

facts before it were similar enough to those generally involved in actions for judicial review of administrative land use decisions to warrant application of the *Bryniarski* test previously reserved for "cases involving appeals under the provisions of a zoning ordinance." *See Bryniarski*, 247 Md. at 144–45, 230 A.2d 289. We see little practical difference in the context of standing between an action "challenging a municipalities' allegedly illegal avoidance of urban renewal and procurement ordinances," and one challenging a county's comprehensive rezoning ordinance because the county council exceeded its powers in enacting it. What the Court said of the plaintiff in *120 West Fayette St.* is equally true of Chapin, Bell, and Shorter in the present case:

> Because, [plaintiff] had alleged that it will be able to both see and hear the allegedly illegal redevelopment of these properties from its doorsteps, it follows that [plaintiff] will be directly impacted by and had a direct interest in the redevelopment.

407 Md. at 272–73, 964 A.2d 662.

Our conclusion that the Court's reasoning in *120 West Fayette St.* should apply in the present case is consistent this Court's analysis and holding in *Long Green Valley*. In that case, the plaintiffs filed a complaint seeking a declaration that the Maryland Agricultural Land Preservation Foundation ("MALPF") had misinterpreted the terms of an agricultural preservation easement to permit the landowners to construct and operate a creamery on the property. 205 Md.App. at 642–43, 46 A.3d 473. Defendants asserted that the plaintiffs lacked standing to bring the action and the circuit court agreed. On appeal, the plaintiffs contended that they had standing based on, among other grounds, the fact that they would be *prima facie* "specially harmed"—i.e. aggrieved—by the creamery because of its proximity to their properties.

This Court, quoting the above-cited passage from *120 West Fayette St.* explained, in pertinent part, that:

> Based on *120 W. Fayette's* extension of the standing principles of ... *Bryniarski* [and its precursors] beyond the

judicial review arena, it appears that adjoining, confronting or neighboring property owners may have standing to challenge as an illegal or *ultra vires* action the approval of a proposed use of land subject to a MALPF easement.

*Long Green Valley,* 205 Md.App. at 688, 46 A.3d 473. Noting that the appellants in that case owned property "adjacent to" the area governed by the easement, and that they alleged that they would suffer various harms if the MALPF's interpretation of the easement were to stand, we concluded that:

Following the reasoning of *120 W. Fayette,* the [appellants] would be considered *prima facie* aggrieved, and thus relieved of the burden of *alleging* specific harm. . . .

Thus, we conclude that the circuit court, without the benefit of *120 W. Fayette,* erred in determining on summary judgment that the [appellants] lacked neighbor property owner standing.

*Id.* at 689, 46 A.3d 473 (emphasis in original).

*Long Green Valley* provides further support to the notion that *prima facie* aggrievement principles should apply in the instant case. First, as with *120 West Fayette St.* and the case at bar, *Long Green Valley* was an action for declaratory relief. Second, in that case, plaintiffs challenged the legality of an "approval of a proposed use of land." 205 Md.App. at 688, 46 A.3d 473. Here, likewise, appellants have challenged the legality of the County's approval of certain land uses for Parcels 69, 200, 114, and 141.

Appellees point out that there are differences between this case and *120 West Fayette St.* and *Long Green Valley.* First, appellees argue that those cases did not, as here, involve a challenge to the legality of comprehensive rezoning legislation, but instead dealt with claims concerning the legality and interpretation of contractual instruments—the Land Disposition Agreement in *120 West Fayette St.* and the agricultural preservation easement in *Long Green Valley.*

We do not consider this difference to be dispositive. While appellees are certainly correct in their observation that nei-

ther *120 West Fayette St.* nor *Long Green Valley* involved rezoning legislation enacted by a County Council, it is equally true that the former cases dealt with the regulation of land use by a governmental body. As the Court stated in *120 West Fayette St.,* even though "[z]oning and land use provisions are not completely synonymous and co-terminous, [ ] they are closely related, as zoning is a form of land use regulation." *120 West Fayette St.,* 407 Md. at 271 n. 7, 964 A.2d 662 (internal quotation marks and citations omitted). Indeed, the similarities between zoning and other land use regulations inspired both the Court of Appeals' and this Court's conclusions in *120 West Fayette St.* and *Long Green Valley* that *prima facie* aggrievement principles should apply in those cases. *See* 407 Md. at 271–72, 964 A.2d 662; 205 Md.App. at 687–89, 46 A.3d 473. For the same reasons, we perceive no logical or practical reason why we should remove this case from the application of the principles espoused in *120 West Fayette St.* and *Long Green Valley* simply because appellants have challenged a comprehensive zoning ordinance, as opposed to another form of land use regulation or governmentally-imposed development control.

Second, appellees argue that *120 West Fayette St.* and *Long Green Valley* are distinguishable from the instant facts because the land use regulation in those cases affected only a small number of properties. Here, in contrast, Bill 12–11 affected tens of thousands of properties across Anne Arundel County.

We disagree with appellees that the scope of appellants' challenge extends to all of the 59,045 parcels rezoned by the bill. The only claim of appellants applicable to the entirety of Bill 12–11—inadequate public notice—was dropped at the hearing before the circuit court and is no longer before us. What remains are, essentially, challenges to three discrete and readily severable portions of the bill, involving Amendment 25 and Parcels 114 and 141. These challenges do not affect tens of thousands of properties and owners, but, instead, involve, at

most, thirteen parcels and their owners.[9] We are not convinced that the rule in the instant case should differ from the one articulated in *120 West Fayette St.* and *Long Green Valley*. In light of *120 West Fayette St.* and *Long Green Valley*, and, pending further instruction from the Court of Appeals, we hold that the *prima facie* aggrievement principles articulated in *Bryniarski* are applicable to the present case.[10]

Applying these principles, appellant Shorter owns property abutting Parcels 69 and 200—parcels rezoned by Amendment 25—and, therefore, has been *prima facie* aggrieved by the enactment of that amendment. Thus, appellants have standing to challenge Amendment 25. *See Long Green Valley*, at 652, 46 A.3d 473 (quoting *Board of License Comm'rs v. Haberlin*, 320 Md. 399, 404, 578 A.2d 215 (1990) ("Where there exists a party having standing to bring an action or take an appeal, we shall not ordinarily inquire as to whether another party on the same side also has standing.")). In our view, appellants Chapin and Bell are near enough to Parcel 141 to be *prima facie* aggrieved. Chapin's property is located approximately 100 feet from this parcel, and Bell's property sits only 80 feet away. Evidencing the unobstructed

---

9. Specifically, the challenges to Parcels 114 and 141 each involve one parcel and one owner. The challenge to Amendment 25 involves, at most, eleven parcels and their owners.

10. Our conclusion is consistent with the Court of Appeals' recent summary of Maryland's standing requirements in *Kendall v. Howard County*, 431 Md. 590, 604–06, 66 A.3d 684 (2013). Quoting *Bryniarski*, 247 Md. at 144, 230 A.2d 289, the Court explained that, in an action challenging " 'a zoning ordinance for constitutional or other reasons,' a plaintiff must allege with specificity precisely 'how he is *specially damaged* by the zoning ordinance.' " (Emphasis added in *Kendall*.) The Court continued:

 The determination of whether a plaintiff has sufficiently alleged that he or she is "personally and specially affected in a way different from that suffered by the public generally" depends upon "the facts and circumstances of the particular case under review." [*Bryniarski*, 247 Md. at 144, 230 A.2d 289].

 Citing *Ray v. Mayor of Baltimore*, 430 Md. 74, 85, 59 A.3d 545 (2013), the Court then noted that "We have held that a party's proximity to the area affected by a local land use decision may, under certain circumstances, satisfy this 'specially damaged' standing requirement."

closeness of their properties to the rezoned area, both Chapin and Bell can see Parcel 141 from various points on their properties, and hear noise originating therefrom.[11] Appellants have standing to challenge the legality of Bill 12–11's rezoning of Parcel 141.[12]

For the aforesaid reasons, the circuit court erred in concluding that appellants lacked standing with respect to their challenges to the rezoning of Parcels 69, 200, and 141.

## II. "Almost *Prima Facie*" Aggrievement

Appellants assert that, if not *prima facie* aggrieved, they have still been sufficiently aggrieved to have standing in the instant case. Because we have already determined that appellants are *prima facie* aggrieved as to Parcels 69, 200, and 141, we focus our analysis of this argument on the sole remaining parcel herein at issue—Parcel 114.

In its recent decision in *Ray v. Mayor and City Council of Baltimore*, 430 Md. 74, 59 A.3d 545 (2013), the Court of Appeals observed that, in addition to those who have been *prima facie* aggrieved, Maryland law gives standing to those who have been "almost *prima facie* aggrieved." As the Court explained:

Maryland courts have accorded standing to challenge a rezoning action to two types of protestants: those who are *prima facie* aggrieved and those who are almost *prima facie* aggrieved. A protestant is *prima facie* aggrieved when his proximity makes him an adjoining, confronting, or

---

**11.** *See Ray*, 430 Md. at 83 n. 6, 59 A.3d 545 ("Although proximity is the sole determinative factor [in cases of *prima facie* aggrievement], courts have mentioned additional claims of aggrievement present in a given case, if those claims supported the court's holding.").

**12.** *Compare Kendall v. Howard County*, 431 Md. 590, 615, 66 A.3d 684 (2013) (holding that plaintiffs lacked standing to bring action challenging "a variety of County resolutions, ordinances, zoning decisions, and administrative actions" as violative of the County Charter because plaintiffs failed to show concrete injury). However, the plaintiffs in *Kendall* did not demonstrate that they were specially harmed by the County Council's actions and instead asserted that they had standing solely as voters. *Id.* at 607, 66 A.3d 684.

nearby property owner. A protestant is specially aggrieved when she is farther away than an adjoining, confronting, or nearby property owner, but is still close enough to the site of the rezoning action to be considered almost *prima facie* aggrieved, *and* offers "plus factors" supporting injury. Other individuals are generally aggrieved.

*Id.* at 85, 59 A.3d 545 (emphasis in original).

The distinction between those *prima facie* aggrieved, those almost *prima facie* aggrieved, and those generally aggrieved can be traced to the laws of public nuisance. As the Court in *Ray,* quoting Edward H. Ziegler, Jr., RATHKOPF's THE LAW OF ZONING AND PLANNING § 63:14 (2012), explained:

Inasmuch as a public nuisance was an offense against the state and, accordingly, was subject to abatement on motion of the proper governmental agency, an individual would not maintain an action for a public nuisance unless he suffered some special damage from the public nuisance.

430 Md. at 82, 59 A.3d 545 (emphasis in original removed).

■ The terminology used by Maryland's courts to describe the requirement to show special damage has evolved. *See Cassel v. Mayor and City Council of Baltimore,* 195 Md. 348, 353, 73 A.2d 486 (1950) (party must be "injuriously affected"); *Bryniarski,* 247 Md. at 144, 230 A.2d 289 (party must be "aggrieved"); *Ray,* 430 Md. at 83, 59 A.3d 545 (party must be "specially aggrieved"). Whatever the terminology employed, this requirement necessitates that, in order "to have standing to challenge a zoning reclassification, a person's property interest 'must be such that he is personally and specially affected in a way different from that suffered by the public generally.'" *Ray,* 430 Md. at 77, 59 A.3d 545 (quoting *Bryniarski,* 247 Md. at 144, 230 A.2d 289).

As explained in *Bryniarski,* and expanded upon by *Ray, 120 West Fayette St.,* and *Long Green Valley,* the law presumes that a property owner has suffered the requisite damage if his or her property adjoins, confronts, or is nearby the rezoned land. *See Ray,* 430 Md. at 85, 59 A.3d 545; *Bryniarski,* 247 Md. at 145, 230 A.2d 289; *120 West Fayette St.,* 407 Md. at

271–72, 964 A.2d 662; *Long Green Valley*, 205 Md.App. at 688–89, 46 A.3d 473. Such a property owner is, therefore, deemed to be *prima facie* aggrieved, and need not allege and prove "specific harm" unless the presumption is adequately rebutted. *See Long Green Valley*, 205 Md.App. at 689, 46 A.3d 473.

■ In contrast, all other owners are, at most, "almost *prima facie* aggrieved." In order to show almost *prima facie* aggrievement, these owners must establish that they have been specially aggrieved by alleging specific facts showing two things. First, they must allege that their properties "nudg[e] up" against those belonging to *prima facie* aggrieved owners. *Ray*, 430 Md. at 83, 59 A.3d 545. As explained by *Ray*:

> Although there is no bright-line rule for who qualifies as "almost" *prima facie* aggrieved, we have found no cases, in which a person living over 2000 feet away, has been considered specially aggrieved. Rather ... this category has been found applicable only with respect to protestants who lived 200 to 1000 feet away from the subject property.

*Id.* at 91, 59 A.3d 545. Indeed, as pointed out by Ray, no Maryland cases have recognized that owners of property "located[ ] far from the site of rezoning actually qualified as specially aggrieved." *Ray*, 430 Md. at 86, 59 A.3d 545 (internal quotation marks omitted).

Second, to be almost *prima facie* aggrieved, an owner must allege specific facts as to how his or her personal or property rights have been specially and adversely affected by the rezoning in a way different from those of the general public— what the *Ray* Court called "plus factors." *Ray*, 430 Md. at 85, 59 A.3d 545. There are no hard and fast rules as to what constitutes sufficient "plus factors" to show special aggrievement. Instead, "the standard is flexible in the sense that it is based on a fact-intensive, case-by-case analysis." *Id.* at 81, 59 A.3d 545. In making this determination, courts will "examine the specific facts alleged to show aggrievement ... and compare that injury to harm suffered by the general public." *Id.* at 90, 59 A.3d 545.

Applying these rules to the instant case, appellants' standing argument as to Parcel 114 is founded on two related positions. First, appellants point out that Chapin's and Bell's properties are located approximately 500 feet from Parcel 114. Second, appellants assert that the rezoning of Parcel 114 will: 1) increase traffic in the areas surrounding their properties, thereby making the roads more dangerous, 2) increase noise, 3) change the character of their neighborhoods, and 4) affect the values of their properties.

On their first point, we agree with appellants that both Chapin's and Bells' properties are sufficiently close to Parcel 114 that, even if not "adjoining, confronting or nearby" enough to be *prima facie* aggrieved, they are certainly close enough to be almost *prima facie* aggrieved. As to their second contention, we will analyze whether the appellants' "plus factors"— i.e. allegations as to the impact "the changed status of the rezoned property has, or could have, on the use, enjoyment and value of the[ir] propert[ies]," *DuBay v. Crane*, 240 Md. 180, 183, 213 A.2d 487 (1965)—are sufficient to show that Chapin and Bell have suffered an injury special to them and not shared by the public generally.

### 1. Traffic

■ In their affidavits, both Chapin and Bell stated their opinion that the rezoning of Parcel 114 will increase traffic in the areas surrounding their properties and make the roads more dangerous to traverse. In support of the notion that an increase in traffic constitutes special aggrievement, appellants' cite to the portion of the *Bryniarski* decision wherein the Court stated:

> In the petition in this case, moreover, there is the further allegation that the unlawful granting of the special exceptions aggrieved especially the petitioners herein as to *traffic, noise and quiet enjoyment.* This was a sufficient allegation of special damage.

247 Md. at 147, 230 A.2d 289 (internal quotation marks omitted, emphasis added).

However, more recent decisions have clarified that an increase in traffic, by itself, is insufficient to establish standing. For example, in *White v. Major Realty, Inc.*, 251 Md. 63, 64, 246 A.2d 249 (1968), the plaintiffs argued that they had standing because they:

> feared increased traffic, doubted the capacity of the water distribution system, indicated that the public schools were already overcrowded and that the introduction of additional people into the area would 'change the entire character of our community.'

The Court concluded that none of these observations, even if true, established that plaintiffs had suffered "an adverse effect different than that suffered by the public generally," as required for purposes of standing. *Id.* Similarly, in *Ray*, the Court rejected the argument that plaintiffs had standing because the rezoning would increase traffic and make nearby roads more dangerous to drive on. The Court explained that, "there is an overwhelming weight of authority that claims of increased traffic, by protestants who lack close proximity, are insufficient to prove special aggrievement." *Ray*, 430 Md. at 96, 59 A.3d 545. *See also Loughborough Development Corp. v. Rivermass Corp.*, 213 Md. 239, 242, 131 A.2d 461 (1957) (rejecting that an increase in traffic amounted to special aggrievement).

In conclusion, the Court's reasoning in *Ray* and *White* is inconsistent with appellants' claims that an increase in traffic upon the roads surrounding their properties provide them with standing to challenge the rezoning of Parcel 114.

### 2. Noise

■ Chapin and Bell identify two sources of noise which they assert will increase as a result of the enactment of Bill 12–11. First, both Chapin and Bell state that they can hear noise from traffic traveling on nearby roads, and argue that this noise will increase as traffic increases. Second, they argue that they can hear sound from commercial establishments located next to Parcel 114, and contend that this proves that they will also be able to hear sound from the commercial

development planned for Parcel 114. Appellants assert in their complaint that this noise is not *de minimis,* that "[a]t the present time, the noise level at Plaintiffs' properties is unacceptable," and that the rezoning will only add to the "noise pollution."

■ We agree with appellants that the substantial amount of noise traveling from nearby roads and/or commercial establishments to Chapin and Bell's properties is a factor tending to show special aggrievement.[13] We clarify that an injury based on noise from an increase in traffic—which affects the appellants' quiet enjoyment of their properties—is to be distinguished from alleged injury based solely on an increase in traffic generally. The difference lies in the capacity in which the increase in traffic is experienced. In the first instance, the harmful effects of the traffic—the noise—are uniquely experienced by appellants as property owners. In the latter, the effects are experienced only as fellow travelers upon the roads, a harm felt, if at all, by the public generally. *See Bryniarski,* 247 Md. at 144, 230 A.2d 289; *DuBay,* 240 Md. at 185, 213 A.2d 487.

### 3. Neighborhood Character

■ Next, Chapin and Bell argue that the rezoning of Parcel 114 will change the character of their neighborhoods. In *Ray,* the Court rejected that a change in neighborhood, without more, was sufficient to constitute special aggrievement. Specifically, the Court concluded that, "[p]etitioners' allegations of change in the neighborhood are not sufficient to show special aggrievement because they fail to identify a harm that directly impacts their properties." 430 Md. at 94, 59 A.3d 545. In reaching this conclusion, the Court turned to the historical roots of zoning—the law of public nuisance—to

---

**13.** Noise is considered a private nuisance under traditional nuisance laws because it is a non-trespassory invasion of another's interest in the private use and enjoyment of land. *See Rosenblatt v. Exxon Co., U.S.A.,* 335 Md. 58, 80, 642 A.2d 180 (1994).

explain why petitioners lacked standing. The Court explained that:

> As Restatement (Second) of Torts § 821C explains, for a "private individual [to] recover in tort for a public nuisance[, he must have] suffered harm of a different kind from that suffered by other persons exercising the same public right." Restatement (Second) of Torts § 821C cmt. b (1979). Moreover, "[i]t is not enough that he has suffered the same kind of harm or interference but to a greater extent or degree." *Id.*

*Id.* at 94, 59 A.3d 545 (bracketed material added in Ray). Here, the alleged change in neighborhood will be suffered by all others in the neighborhood—i.e., all those "exercising the same public right." *Id.* Mere allegations that the rezoning of Parcel 114 has or will change the character of Chapin and Bell's neighborhood are insufficient to show special aggrievement.

### 4. Property Values

 Lastly, Chapin and Bell assert that the rezoning of Parcel 114 will decrease the value of their properties due to the expected increases in traffic, noise, privacy, and changes in the neighborhood.

Appellees argue that this assertion is precluded by *Ray*, 430 Md. at 97–99, 59 A.3d 545. In *Ray*, the Court upheld a trial court's ruling that expert testimony was required to show that the value of a property will increase or decrease due to planned, but not yet commenced or completed, construction. *Ray*, 430 Md. at 98, 59 A.3d 545. In reaching this conclusion, the *Ray* Court explained:

> In [*Brannon* ], this Court held that an owner of property in a condemnation case was permitted to express her lay opinion as to the before-and-after-taking value of the property. The Court explained that "the owner of the property is presumptively competent to express his opinion of its value" because he is "presumed to have sufficient knowledge

of the price paid, the rents or other income received, and the possibilities of the land for use."

*Id.* (quoting *Brannon v. State Roads Commission of the State Highway Administration,* 305 Md. 793, 801–02, 506 A.2d 634 (1986)). The *Ray* Court then determined that the rule espoused in *Brannon* was inapplicable in circumstances where the change in value of the property was contingent on a future event—in that case, future land development. As the Court explained:

> Unlike the owner in *Brannon,* who was familiar with her property because the taking had already occurred, [petitioner] is not familiar with the value of his property after the [property] is developed, because that is only a future prospect. Thus, [petitioner] is merely speculating without a reasonably good idea of what the property will be worth. Adopting [petitioner's] position would require that we abandon the very justification for the treatment of property owners as presumptively competent to testify about the value of their property. We refuse to do that.

*Id.* at 99, 506 A.2d 634 (internal citations and quotation marks omitted).

*Ray* makes it clear that the lay opinions of appellants are legally insufficient to establish aggrievement arising out of a future loss in property value. Chapin and Bell were, in the words of the *Ray* Court, "merely speculating" as to what their properties would be worth post-development. This is not sufficient to demonstrate special aggrievement.

 In conclusion, the only "plus factor" in favor of a determination that Chapin and Bell have been specially aggrieved with respect to the rezoning of Parcel 114 is the noise radiating from increased traffic and increased commercial activity from that property. On the facts of this case, Chapin and Bell have, indeed, shown special aggrievement. We base this conclusion, not merely on the fact that the amount of noise affecting Chapin and Bell's properties will increase, but on the assertion that it will increase specifically from two sources—traffic and commercial activity—already alleged to

create such disturbances. Because Chapin and Bell have alleged facts that establish special aggrievement, the circuit court erred in concluding that appellants lacked standing to challenge the rezoning of Parcel 114.[14]

### 5. Ripeness

 The circuit court also based its finding that appellants lacked standing on what we have interpreted to be a ripeness issue. The court concluded, in essence, that neither Amendment 25 nor Bill 12–11 immediately caused appellants any injury. Instead, according to the court, any alleged injury was contingent upon further construction on the parcels. The court concluded that appellants had not been specially aggrieved because they had additional opportunities, during the permitting and construction process, to voice concerns about the way these parcels were ultimately utilized.

The County echoes this analysis its brief. Specifically, it asserts:

> Appellants' allegations of special damage are all based on the assumption that the properties rezoned will in fact be developed for a commercial use; Appellants do not allege any actual development activity because no development activity has commenced based on the zoning changes of Bill No. 12–11.... If and when development occurs, any aggrieved property owner will have access to administrative remedies that provide for appeals from the issuance of subdivision plans, site development plans, grading permits and building permits....
>
> Until some type of development is actually approved, the Appellants' allegations of special damages are nothing more than a fear of what might happen.... None of the fears

---

14. Nothing prevents appellees from presenting evidence to rebut Chapin's and Bell's assertions at a later point in these proceedings. *See 120 West Fayette St.,* 407 Md. at 271, 964 A.2d 662 (" 'The person ... challenging the fact of aggrievement has the burden of denying such damage in his or her answer ... and of coming forward with evidence to rebut the presumption of aggrievement.' " (quoting *Sugarloaf v. Dept. of Environment,* 344 Md. 271, 297, 686 A.2d 605 (1996))).

expressed by the Appellants will come to fruition if development proposals or permits are not approved by the County. If and when development does proceed, there are remedies in place for Appellants to oppose that development administratively. Until that time, allegations about harm from possible future development are merely speculative and do not constitute special harm.

We do not find this argument persuasive for several reasons. First, it has been established in Maryland that an aggrieved person can challenge the legality of a zoning classification. *See, e.g., Habliston v. City of Salisbury,* 258 Md. 350, 353–54, 265 A.2d 885 (1970) (plaintiff had standing to challenge zoning ordinance); *Chatham Corp. v. Beltram,* 252 Md. 578, 583–84, 251 A.2d 1 (1969) (same); *Grooms v. La Vale Zoning Bd.,* 27 Md.App. 266, 270–71, 340 A.2d 385 (1975) (same).

Second, in determining whether an owner has been sufficiently aggrieved to have standing, courts have considered the expected effects of the rezoning. To this end, in *DuBay v. Crane,* 240 Md. 180, 213 A.2d 487 (1965), the Court explained that:

in addition to showing the proximity of one property to the other, [a showing of aggrievement] requires proof of *the adverse effect the changed status of the rezoned property has, or could have, on the use, enjoyment and value of the property* of the protestant in order to establish the status of the appellant as an aggrieved person.

*Id.* at 183, 213 A.2d 487 (citations omitted, emphasis added).

The *DuBay* standard has been cited to and applied in *Ray,* 430 Md. at 85, 88–89, 59 A.3d 545 *Wilkinson v. Atkinson,* 242 Md. at 233, 218 A.2d 503, and *White,* 251 Md. at 64, 246 A.2d 249, among other cases.

Finally, we see no merit in preventing parties, *who otherwise have standing,* from pursuing the sorts of challenges raised by appellants on a timely basis. Preventing property owners aggrieved by zoning decisions, even comprehensive zoning decisions, from challenging alleged illegality enacted by or undertaken during the zoning process would, in practice,

give county councils nearly unchecked authority to pass zoning laws. We decline to adopt appellees' position, and, instead, hold in line with Maryland precedent that an aggrieved plaintiff may timely challenge the legality of a zoning ordinance.

### III. The Joinder of All Necessary Parties

 As an alternative, the circuit court dismissed appellants' complaint on the ground that appellant failed to join all necessary parties in the action. Specifically, the court concluded that appellants needed to have joined the owners of all 264 parcels rezoned by Bill 12–11. Appellants argue that this was unnecessary, and we agree.

Pursuant to Md. Code (1974, 2006 Repl. Vol. § 3–405(b) of the Courts and Judicial Proceedings Article ("CJP"), two types of parties were required to be joined in the instant action. First, because this proceeding "involves the validity of a ... county ordinance ...", Anne Arundel County "shall be made a party and is entitled to be heard." This requirement was satisfied because the County was named as a party to this case. Second, as this is an action for declaratory relief, "a person who has or claims any interest which would be affected by the declaration, shall be made a party." CJP § 3–405(a)(1). In *Bender v. Secretary, Maryland Dep't of Personnel,* 290 Md. 345, 350, 430 A.2d 66 (1981), the Court explained this requirement as follows (internal citations omitted):

> Ordinarily, in an action for declaratory judgment, all persons who have an interest in the declaration are necessary parties. Any person who, as a result of a declaration, may gain or be deprived of a legal right or other benefit has an interest that might be affected by the outcome of the action and is, therefore, a necessary party.

 This rule acts to "assure that a person's rights are not adjudicated unless that person has had 'his day in court.' This rule also prevents multiplicity of litigation by assuring a single determination of the entire controversy in a single proceeding." *Id.* at 351, 430 A.2d 66.

As it is currently pled, the necessary parties in this action, other than the County, are the owners of Parcels 114, 141, and the eleven properties reclassified by Amendment 25. This is because, at this point, appellants no longer seek a declaration that Bill 12–11 is invalid in its entirety, but rather to nullify only Amendment 25 and the rezoning of Parcels 141 and 114. It is the owners of these parcels, and only these, who have an "interest which would be affected by the declaration" sought by appellants. The remaining owners of land rezoned by Bill 12–11 would not be affected.

Applying this standard to the facts before us, it is clear that appellants have failed to join all necessary parties. Indeed, appellants named only the County in their initial complaint. Subsequently, several parties intervened in the suit, including BBSS, which owns Parcels 69 and 200 (rezoned by Amendment 25), and Southern Shores Development Company, which owns Parcel 141 (rezoned by Bill 12–11 as initially proposed). Baldwin, which owns Parcel 114, is not a party to the case, but should be. That, as appellants assert, Baldwin is somehow related to or affiliated with BBSS (they do not provide specifics) does not excuse the non-joinder of Baldwin to this case, nor does it permit us to ignore the corporate formalities that allegedly exist between the two entities. Moreover, appellants have failed to join the owners of the remaining parcels subject to Amendment 25 (nor are the names of these owners disclosed in the record).[15] For these reasons, we conclude that appellants have failed to join all necessary parties.

▮▮ However, on these facts, dismissal was inappropriate. "While this Court has on occasion dismissed after a failure to

---

15. The complaint, as currently pled, challenges the legality of Amendment 25 as a whole. However, based on the arguments of the parties in this appeal, it appears that appellants are, in effect, only challenging Amendment 25's rezoning of Parcels 69 and 200. On remand, appellants should clarify which of these alternatives they seek. If they seek the latter, it would be unnecessary for them to add as parties the owners of the remaining nine parcels rezoned by Amendment 25 because BBSS, the owner of Parcels 69 and 200, is already a party to this action.

join necessary parties, it has indicated that ordinarily dismissal is undesirable and that a preferable procedure is to permit an amendment joining the necessary parties." *Bender,* 290 Md. at 350, 430 A.2d 66 (internal quotation marks and citations omitted); *see also Kendall v. Howard County,* 204 Md.App. 440, 449–50, 41 A.3d 727 (2012), *aff'd on other grounds,* 431 Md. 590, 66 A.3d 684 (2013) (dismissal based on the failure to add necessary parties was not warranted solely on the basis of lack of necessary parties). On remand, appellants should be granted leave to amend to add the remaining necessary parties.

**THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY IS VACATED AND THE CASE REMANDED TO IT FOR FURTHER PROCEEDINGS.**

**APPELLEES TO PAY COSTS.**