*Anne Arundel County, Maryland v. Harwood Civic Association*, No. 39, September Term, 2014

**Zoning—Comprehensive Zoning—Legislative Action—Litigation—Standing**

Plaintiffs wishing to challenge in Maryland courts the legislative action adopting a comprehensive zoning ordinance are required to demonstrate taxpayer standing—a standing doctrine required for challenges to legislation. The doctrine of property owner standing (i.e., a proximity-driven standing doctrine) is not the appropriate basis upon which a judicial challenge to a comprehensive zoning legislative action may be maintained.

Circuit Court for Anne Arundel County
Case No.: 02-C-11-164569
Argued: 13 January 2015

IN THE COURT OF APPEALS OF
MARYLAND

No. 39

September Term, 2014

---

ANNE ARUNDEL COUNTY,
MARYLAND, et al.

v.

HARWOOD CIVIC ASSOCIATION,
INC., et al.

---

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

---

Opinion by Harrell, J.
Battaglia, Adkins, and McDonald, JJ.,
dissent.

---

Filed:  April 21, 2015

In *Anne Arundel County, Maryland v. Steve Bell*, ___ Md. ___, ___ A.3d ___ (2015) (No. 29, September Term, 2014), filed immediately prior to the opinion in the present case, we concluded that the doctrine of property owner standing is not the appropriate test for a judicial challenge to a comprehensive zoning action. *See id.*, Slip Op. at 1. Rather, plaintiffs wishing to challenge in Maryland courts the legislative process and final action adopting a comprehensive zoning are required to demonstrate taxpayer standing—the standing doctrine applicable to judicial challenges to legislative actions. *Id.* Accordingly, *Bell* answers the first two questions presented to us in this appeal.[1] With that as a given, we proceed here to determine whether the Protestants in this matter alleged sufficiently a basis for their standing to challenge the adoption by the

---

[1] We issued a writ of certiorari in the present matter to consider the following questions, along with three others:

> 1. Whether the *prima facie* presumption of aggrievement for nearby property owners established by *Bryniarski v. Montgomery County Board of Appeals*, 247 Md. 137, 230 A.2d 289 (1967) should be extended to cases in which a private citizen challenges the validity of legislatively enacted comprehensive zoning?

> 2. Whether the considerations established as relevant to special aggrievement in *Ray v. Mayor & City Council of Baltimore*, 430 Md. 74, 59 A.3d 545 (2013) apply equally to cases in which a private citizen challenges the validity of legislatively enacted comprehensive zoning?

These questions are nearly identical to those posed in *Anne Arundel County, Maryland v. Steve Bell*, ___ Md. ___, ___ A.3d ___ (2015) (No. 29, September Term, 2014), differing in phraseology only. *Id.*, Slip Op. at 6.

County Council for Anne Arundel County in 2011 of a comprehensive zoning ordinance for a large, different portion of Anne Arundel County than was involved in *Bell*.

## I. FACTS AND PROCEDURAL HISTORY

Anne Arundel County (the "County"), a charter county, adopted in 2009 a comprehensive land use master plan, called a "General Development Plan" ("GDP"), for the entire County. During the run-up to that action, between 2007 and 2009, the County engaged in the process of preparing the GDP. The County's Office of Planning and Zoning (the "OPZ") prepared a draft of the GDP and submitted it to the County Council (the "Council") in July 2009. After hearings on the draft (including several amendments), the Council approved the final GDP by Bill 64-09.

Thereafter, beginning in late 2009, the County initiated a county-wide, systematic, and comprehensive review of zoning with a mind to implementing, as appropriate, the recommendations of the GDP through a series of comprehensive zoning bills. The County is comprised of seven Councilmanic Districts, which the OPZ combined into three groups for the purpose of its zoning review and the comprehensive zoning initiatives. One of these groups consisted of properties located in Councilmanic Districts VI and VII, which are together referred to colloquially as "South County."

Property owners desiring rezoning were given an opportunity to submit applications to the County. After posting online the received property owner applications, the OPZ evaluated the applications in light of the recommendations of the GDP, made a recommendation as to each application, and incorporated its various other

2

recommendations in a draft of what became Bill 44-11.[2]  The County Planning Advisory Board reviewed the OPZ's recommendations and, after holding public hearings and receiving testimony and written statements from the public, made its recommendations to the County Executive.

In August 2011, the Council adopted Bill 44-11, with 40 amendments to the draft bill submitted by the OPZ.  The County Executive signed Bill 44-11, but vetoed 16 of the amendments.[3]  The Council voted successfully to override ten of those vetoes.[4]  Bill 44-11 became "final" and effective on 21 October 2011.

On 6 October 2011, several non-profit community associations and individual property owners (collectively, the "Protestants" or, later in this opinion, "Respondents") filed in the Circuit Court for Anne Arundel County a Complaint for Declaratory Judgment and Equitable Relief, in which they sought specifically a declaration that certain provisions of Bill 44-11 were void because assertedly they granted illegal spot zoning and were inconsistent with the recommendations of the GDP.  In the Complaint, the individual property owners each alleged that they owned property and resided "near"

---

[2] All of the properties relevant to this appeal are located in Councilmanic Districts VI and VII.

[3] Specifically, the County Executive vetoed Amendments 9, 18, 22, 25, 26, 27, 28, 30, 34, 36, 37, 41, 43, 44, 45, and 46.

[4] Specifically, the Council voted to override the vetoes to Amendments 9, 22, 25, 26, 27, 30, 34, 37, 43, and 46.

or "adjacent to" one of the properties rezoned by Bill 44-11[5] and that "the value of [their] property and [] enjoyment thereof will be substantially reduced as a result of this rezoning." Owners of some of the properties rezoned by Bill 44-11 (collectively, the "Defendants") filed motions to intervene, all of which were granted.

The County and several Defendants filed motions to dismiss the Complaint, arguing that the Protestants (1) failed to exhaust required administrative remedies; (2) failed to state a claim for a declaratory judgment; and (3) did not have standing. Protestants filed a memorandum in opposition, but, before the Circuit Court ruled on the motions to dismiss, the Protestants filed on 27 January 2012 an Amended Complaint in which they added additional plaintiffs and defendants. The other allegations of the Protestants, however, remained the same. Most of the Defendants and the County responded with another wave of motions to dismiss, reiterating their previous arguments. One of the intervening Defendants (Alva Reta Trahan, hereinafter "Ms. Trahan"), in her motion to dismiss, argued, *inter alia*, that the Protestants "do not allege facts sufficient to establish taxpayer standing, and should dismiss [most of the counts of the complaint] because [Protestants] do not allege facts sufficient to establish common law standing."[6] Ms. Trahan argued that, as the Protestants had not alleged that Bill 44-11 would result in an increase in their taxes (and in fact alleged that Bill 44-11 would result in decreased

---

[5] *See infra* note 8.

[6] Based on the cases she relied on in support of her argument as to "common law standing," it appears that Ms. Trahan was referring in this assertion to property owner standing.

4

property values), they could not satisfy the requirements of taxpayer standing. The rest of Ms. Trahan's arguments echoed those of the other Defendants.

Protestants submitted a memorandum in opposition to Ms. Trahan's motion to dismiss (hereinafter "May 2013 Memorandum"), in which they argued, among other things, that their allegations satisfied the requirements of *Bryniarski v. Montgomery County Board of Appeals*, 247 Md. 137, 230 A.2d 289 (1967). Furthermore, in a footnote, *Protestants noted that they "do not claim to have standing as taxpayers or that any of the plaintiff organizations have standing except as derivatively through their members.*" (emphasis added).

Following a hearing, the Circuit Court issued an Opinion and Order on 27 March 2012, dismissing the Protestants' Amended Complaint, but granting leave to amend within 30 days. The trial judge noted, in a section entitled "Disputed Legal Issues": "Defendants claim that Plaintiffs lack both taxpayer and common-law standing. The Plaintiffs argue[] in response that their Complaint alleges harm to several individual plaintiffs sufficient to give them standing to bring this action. . . ." In a later footnote, the trial judge recognized that Protestants conceded in the May 2013 Memorandum that they did not claim to have taxpayer standing, and proceeded to consider whether they satisfied property owner standing. Relying on *Bryniarski* for the proposition that a plaintiff seeking a declaratory judgment that a zoning ordinance is unlawful must allege special harm with "definite" allegations and "competent evidence," *see Bryniarski,* 247 Md. at 144, 230 A.2d at 294, the Circuit Court concluded that all Protestants lacked standing. The Circuit Court reasoned that "[t]he mere fact that several [Protestants] own property

5

adjacent to property rezoned by Bill 44-11 does not by itself meet the burden of proving special damage by competent evidence required in cases seeking a declaratory judgment." The court's reasoning continued that the Protestants' allegations of reduced property values and enjoyment of the properties were "indistinguishable from those found insufficient in [*Ray v. Mayor & City Council of Baltimore*, 203 Md. App. 15, 36 A.3d 521 (2012), *aff'd on other grounds*, 430 Md. 74, 59 A.3d 545 (2013)]." Finally, the Circuit Court concluded that Protestants failed to state a claim for spot zoning.[7]

On 26 April 2012, the Protestants filed a Second Amended Complaint, adding additional plaintiffs and defendants yet again and seeking a declaration that seven of the

---

[7] Spot zoning is

> the arbitrary and unreasonable devotion of a small area within a zoning district to a use which is inconsistent with the use to which the rest of the district is redistricted . . . . It is . . . universally held that a "spot zoning" ordinance, which singles out a parcel of land within the limits of a use district and marks it off into a separate district for the benefit of the owner, thereby permitting a use of that parcel inconsistent with the use permitted in the rest of the district, is invalid if it is not in accordance with the comprehensive zoning plan and is merely for private gain.

*Mayor and Council of Rockville v. Rylyns Enterprises, Inc.*, 372 Md. 514, 546, 814 A.2d 469, 488 (2002) (emphasis removed) (quoting *Cassel v. Mayor and City Council of Baltimore*, 195 Md. 348, 355, 73 A.2d 486, 488–89 (1950)). Spot zoning is not invalid *per se*, but rather its validity "depends on the facts of each individual case." *Id.* (quoting *Tennison v. Shomette*, 38 Md. App. 1, 8, 379 A.2d 187, 192 (1977)).

amendments to Bill 44-11 and the rezoning of one additional property[8] were void because

they were inconsistent with the recommendations of the GDP, constituted illegal spot

---

[8] Protestants challenged Amendments 9, 22, 26, 34, 37, 43, and 46. Each of these Amendments were vetoed by the County Executive, but the vetoes were overridden ultimately by the County Council.

Protestants challenged also the rezoning of the property located at 1625 Old Generals Highway, Crownsville, Maryland (the "Wedding Chapel Property"). In his Veto Statement, the County Executive wrote that he would have exercised a line item veto of this rezoning, but declined to because it would have left this property without a classification, which was "neither desirable nor legal."

The following list contains each challenged rezoning its corresponding challenger(s):

1. Amendment 9 (rezoning 11.5 acres at 1308 Defense Highway) was challenged by Ronald Haritan.

2. Amendment 22 (rezoning properties on the northeast and northwest corners of the intersection of Riva Road and West Central Avenue) was challenged by Elizabeth Caney and David Gray.

3. Amendment 26 (rezoning properties at 1027, 1081, 1085, 1125, 1131, and 1133 Mt. Zion-Marlboro Road) was challenged by Shirley Harrison.

4. Amendment 34 (rezoning various properties on Cox Road and Polly Place) was challenged by Richard M. Paukstitus and Elizabeth Novotny and Curtis and Karen Pendleton.

5. Amendment 37 (rezoning 1300 Defense Highway) was challenged by Ronald Haritan.

6. Amendment 43 (rezoning 1541 Defense Highway) was challenged by Duane and Rosie Delaney.

7. Amendment 46 (rezoning 2972 Solomons Island Road) was challenged from Greg Traintifillides and August and Betty Kruelle.

8. The rezoning of 1625 Old Generals Highway was challenged by Roman and Kimberly Ferrer, Robert E. Lamothe, Dwayne Harman, Jan Orazem, Judith Anderson Harris, and Brian Johnson and Erica Zippel.

(Continued…)

zoning, and exceeded the County's zoning authority. The Protestants reiterated generally the proximity of their properties to the rezoned properties, and alleged further various discrete injuries, including reduced property values, reduced enjoyment of the properties, increased traffic, increased noise and light pollution, fear of damage to trees and mailboxes on their properties as a result of increased traffic, damage to the rural nature of the properties, increased run-off from storm water, and the pressure to permit additional and more intense commercial uses in the future. One Protestant, Shirley Harrison ("Ms. Harrison"), who owns and resides on a property "adjacent to" a property rezoned in Bill 44-11, reiterated her allegations that enjoyment of her property would be reduced substantially and that the rezoning would cause an increase in traffic. She alleged further in the Second Amended Complaint that she "also fears that her property taxes will increase due to the R5 zoning on the adjacent rezoned property."[9]

In response to the Second Amended Complaint, some of the Defendants, including the County, filed new motions to dismiss, asserting that the Protestants lacked standing still, failed to state a judiciable controversy ripe for adjudication, failed to join all necessary parties, and failed to state a claim for which relief could be granted.

The Protestants, in their opposition to the motion to dismiss the second amended complaint filed by the County, reiterated, among other things, their argument that their

(…continued)
The Protestants challenged previously Amendments 25, 27, and 30 to Bill 44-11, but no longer challenged those Amendments in their Second Amended Complaint.

[9] This appears to be the first and only horseshoe in the record thrown by any Protestant in the direction of taxpayer standing.

8

"allegations of special aggrievement are sufficient" to establish their standing. The Protestants analyzed in this portion of their opposition *Bryniarski* and *Ray*, as well as *120 W. Fayette St., LLLP v. Mayor and City Council of Baltimore*, 407 Md. 253, 964 A.2d 662 (2009) [hereinafter "*Superblock I*"]. In their discussion of *Superblock I*, the Protestants appear to have conflated our jurisprudence regarding property owner standing with that directed to taxpayer standing, when referring to the allegedly *ultra vires* action of the Mayor and City Council of Baltimore. Furthermore, ignoring apparently certain of the limited revisions made in the allegations of their Second Amended Complaint, the Protestants suggested, in a footnote, that "[a]ll of the individual Plaintiffs allege that they anticipate a reduction in the value of their property and their enjoyment of it."

One of the Defendants (Boone's Estates, Inc., hereinafter "Boone's Estates"), focused pointedly in its motion to dismiss on the allegations of Ms. Harrison. Boone's Estates argued that Ms. Harrison's allegations failed to satisfy the "special damage" requirements of *Bryniarski* and that she failed to allege that she would be "specially affected . . . in a way different from that suffered by the public generally." (emphasis removed). Specifically, Boone's Estates contended that Ms. Harrison's new allegations of an increase in traffic and an increase in property taxes did not constitute special harm because both harms would be regional in scope. Finally, Boone's Estates maintained that, "if it is argued that [Ms. Harrison] should have standing to challenge Amendment 26 as a taxpayer, the argument must fail because [she] has not alleged that she will suffer pecuniary losses from the change in zoning."

9

The Protestants filed an opposition to the motion to dismiss filed by Boone's Estates as well. In this opposition the Protestants noted that Ms. Harrison's revised allegations were sufficient to give her property owner standing, relying on *Cassel v. Mayor and City Council of Baltimore*, 195 Md. 348, 353, 73 A.2d 486, 488 (1950) (concluding, with minimal analysis, that property owners residing less than 100 feet from property rezoned by a piecemeal rezoning ordinance had standing to attack the validity of the amending ordinance), and *Habliston v. City of Salisbury*, 258 Md. 350, 355, 265 A.2d 885, 887 (1970) (granting property owner standing in a challenge to a piecemeal rezoning). The Protestants did not address in any way Boone's Estates arguments regarding taxpayer standing, nor did they disavow explicitly their earlier disavowal of taxpayer standing.

Boone's Estates replied to Protestants' opposition and, after addressing what it called Ms. Harrison's argument "that *Bryniarski* does not require a plaintiff in zoning cases at equity to make definite allegations of special damage," Boone's Estates turned to what it called Ms. Harrison's "alternat[e]" argument that she had alleged sufficiently nonetheless "special damage." Boone's Estates argued that the potential increase in property taxes was neither "definite" nor "special," as the same effects would be felt by all owners of property located in the area of parcels rezoned.

Finally, the Protestants also opposed a motion to dismiss filed by Defendant 1625 Limited. In this opposition, the Protestants maintained again that they enjoyed standing

as "adjoining property owners," relying indiscriminately on cases discussing both property owner standing and taxpayer standing.[10]

Following a hearing, the Circuit Court issued on 11 October 2012 an Opinion and Order dismissing the Second Amended Complaint. The trial judge noted again, in a section entitled "Disputed Legal Issues," that "Defendants claim that Plaintiffs lack both taxpayer and common-law standing. The Plaintiffs argue[] in response that their Complaint alleges harm to several individual plaintiffs sufficient to give them standing to bring this action." After discussing *Superblock I* and *Long Green Valley Association v. Bellevale Farms, Inc.*, 205 Md. App. 636, 46 A.3d 473, *aff'd on other grounds*, 432 Md. 292, 68 A.3d 843 (2013), the trial judge concluded rightly that these two cases were distinguishable from the matter at hand by virtue of the fact that the protestants in those cases were challenging a land disposition agreement and an agricultural easement, respectively, not a comprehensive zoning ordinance.

The trial judge grouped the plaintiffs by virtue of their respective allegations and addressed each group in turn to evaluate whether they enjoyed standing. Regarding Ms. Harrison, the trial judge noted, in a footnote, that "an increase in property value by

---

[10] Specifically, refuting 1625 Limited's argument that the Protestants' allegations were too "speculative," the Protestants asserted: "[i]t is the potential for harm, not the existence of actual harm, that gives a plaintiff the right to sue." In support thereof, the Plaintiffs directed the court's attention to *120 W. Fayette St., LLLP v. Mayor and City Council of Baltimore*, 407 Md. 253, 964 A.2d 662 (2009) [*Superblock I*] (discussing both property owner and taxpayer standing), *Habliston v. City of Salisbury*, 258 Md. 350, 265 A.2d 885 (1970) (discussing property owner standing), *Crozier v. County Comr's of Prince George's County*, 202 Md. 501, 97 A.2d 296 (1953) (discussing property owner standing), and *Citizens Planning & Housing Ass'n v. County Executive of Baltimore County*, 273 Md. 333, 344, 329 A.2d 681, 687 (1974) (discussing taxpayer standing).

11

definition is not 'harm' and that a tax increase for more valuable property does not constitute a viable zoning complaint." The Circuit Court went on to conclude that Ms. Harrison's allegations were too generalized to satisfy the requirement of "special harm." The trial judge concluded that all, save two, of the Protestants lacked standing to challenge Bill 44-11. As to the two, he concluded that Richard M. Paukstitus and Elizabeth Novotny (hereinafter the "Wildlife Complainants") enjoyed property owner standing because of their allegation that the rezoning of a nearby parcel "will result in a loss of or a deterioration of the wildlife habitat and will destroy or drive off the currently abundant wildlife there." This assertion was deemed sufficient to "satisf[y] the standard of special harm distinct from the general public as required in *Habliston* and *Bryniarski*."

Regarding whether the Protestants (including Ms. Harrison and the Wildlife Complainants) failed to state a claim, the Circuit Court, relying on the Preamble to Chapter 181 of the Acts of 2009 (House Bill 297),[11] concluded that the rezoning actions

---

[11] Chapter 181 of the Acts of 2009 revised portions of then-Article 66B of the Maryland Code in direct response to our opinion in *Trail v. Terrapin Run, LLC*, 403 Md. 523, 943 A.2d 1192 (2008), where we interpreted the meaning of the word "conform" as it appeared in Maryland Code (1957, 2003 Repl. Vol.), Article 66B, § 1.00(k). Chapter 181 was designed expressly to abrogate our holding in *Terrapin Run*. The Circuit Court in the present case referred to this portion of the Preamble to Chapter 181:

> While the holding of the *Terrapin Run* decision could be narrow and confined to the granting of special exceptions, the General Assembly is concerned that a broader interpretation of the decision could undermine the importance of making land use decisions that are consistent with the comprehensive plan;

> * * *

> (Continued…)

12

that Protestants challenged were "not 'rare' in the context of the huge number of properties contained in southern Anne Arundel County and otherwise impacted by the comprehensive rezoning process." The trial judge rejected further Protestants' argument, citing *Cassel*, 195 Md. at 354, 73 A.2d at 488, that "[t]he test of invalidity of a zoning ordinance [in a piece rezoning context] is whether it is arbitrary, unreasonable and discriminatory, and has no substantial relation to the public health, safety, morals, or general welfare." Relying on *County Council of Prince George's County v. Offen*, 334 Md. 499, 639 A.2d 1070 (1994) (challenging a comprehensive zoning action), the Circuit Court determined the appropriate standard to apply was whether Protestants alleged the County was acting "within its legal boundaries." The court concluded that it "must find that the County Council acted 'within its legal boundaries' [because] it is required by statute to enact a GDP and comprehensive zoning." Accordingly, the Circuit Court concluded that all Protestants failed to state a claim on which relief could be granted and dismissed the Second Amended Complaint.

---

(…continued)
The people of Maryland are best served if land use decisions are consistent with locally adopted comprehensive plans;

\* \* \*

[And i]t is the intent of the General Assembly, as evidenced in Article 66B, §§ 1.03(e) and 4.09, that comprehensive plans should be followed as closely as possible while not being elevated to the status of an ordinance and that deviations from the plan should be rare[.]

Chapter 181 of the Acts of 2009, at 981.

The Protestants appealed to the Court of Special Appeals, where they argued again that they enjoyed property owner standing by virtue of their proximity to various rezoned parcels. The Protestants noted first, without apparent exception, that "[i]n each case, the Second Amended Complaint also alleges that [the Protestants] believe that the challenged rezoning will substantially reduce the value of their property and their enjoyment of it . . . ." Although noting Ms. Harrison's allegations of increased property taxes later in their brief, at no point did the Protestants discuss or advance anything that could be construed as an argument or authorities justifying taxpayer standing. The County, in its responsive brief, reiterated its arguments that the Protestants failed to satisfy *Bryniarski*'s standing requirements, and similarly did not discuss taxpayer standing further.

The Court of Special Appeals, in an unreported opinion, relying on its opinion in *Bell v. Anne Arundel County, Md.*, 215 Md. App. 161, 79 A.3d 976 (2013)[12], concluded that the doctrine of property owner standing applies to declaratory judgment actions challenging comprehensive zoning legislation. Applying those standards to the present case, the intermediate appellate court concluded that "the circuit court erred in concluding that [Protestants] lacked standing with respect to their challenges of Amendments 9, 22, 26, 37, and 46 and the portion of Bill 44-11 rezoning 1625 Generals Highway." As for Amendment 43, the appellate court concluded that two of the Protestants lived close enough to the rezoned property to be almost *prima facie* aggrieved. *See Ray v. Mayor & City Council of Baltimore*, 430 Md. 74, 91, 59 A.3d 545,

---

[12] As noted at the outset, in *Bell*, ___ Md. ___, ___ A.3d ___, filed today, we reversed the holding of the Court of Special Appeals in *Bell*.

14

555 (2013). The panel of the court did not determine whether the Protestants alleged sufficiently "plus factors" supporting special damage, and instead remanded the case to permit the Protestants to amend their Complaint in light of the court's discussion of "plus factors" in *Bell*. The panel did not discuss taxpayer standing, save for a vague and brief comment discussing the holding in *Superblock I*.[13]

The intermediate appellate court concluded also that the trial judge erred when he applied the "legal boundaries test" because he should have reviewed the spot zoning allegations for "arbitrary, unreasonable, and discriminatory action." After observing that one purpose of Chapter 674 of the Acts of 2013[14] was to "clarify[] a certain requirement

---

[13] Specifically, the intermediate appellate court stated, "[The proximity principles articulated in *Ray v. Mayor & City Council of Baltimore*, 430 Md. 74, 59 A.3d 545 (2013)] apply to judicial review of a board of zoning appeals decision, [*Bryniarski v. Montgomery County Board of Appeals*, 247 Md. 137, 230 A.2d 289 (1967)]; a challenge to a municipality's 'allegedly illegal avoidance of urban renewal and procurement ordinances,' [*Superblock I*, 407 Md. at 272, 964 A.2d at 673]; and a challenge 'as an illegal or *ultra vires* action the approval of a proposed use of land subject to a [Maryland Agricultural Land Preservation Foundation] easement,' [*Long Green Valley Association v. Bellevale Farms, Inc.*, 205 Md. App. 636, 688, 46 A.3d 473, 504, *aff'd on other grounds*, 432 Md. 292, 68 A.3d 843 (2013)]." None of these cases involved a challenge to a comprehensive zoning action.

[14] Chapter 674 of the Acts of 2013 was conceived as a "clean-up amendment" following the recodification project that resulted in 2012 in adoption of the Land Use Article. During the process of the code revision project (designed to "revise, restate, and recodify the laws of the State relating to zoning, planning, subdivision, and other land use mechanisms, . . . and generally relating to the laws of the State concerning land use," Chapter 426 of the Acts of 2012, at 2198–99), the Land Use Code Revision Committee ("the Committee") took pains to note carefully any and all substantive revisions brought about during the revision project, of which there were few. In the process of drafting the Land Use Article in 2012, the Committee identified a number of "significant issues" it confronted in the code revision process and deemed to be outside the purview of the Committee's scope of work. Revisor's Note, Maryland Code (2012), Land Use Article,

(Continued…)

15

of consistency with the plan for certain zoning laws and other local law," the court also concluded that "[b]ecause the circuit court did not have the opportunity to consider this legislative change and because [it was] already remanding the case, [the court would] remand on the plan consistency question, too." Accordingly, the Court of Special Appeals reversed the judgment of the Circuit Court and remanded the case for further proceedings.

The County and several Defendants (collectively, the "Petitioners") petitioned us for a writ of certiorari, which we granted on 18 June 2014, to consider the following questions:

> 1. Whether the *prima facie* presumption of aggrievement for nearby property owners established by *Bryniarski v. Montgomery County Board of Appeals*, 247 Md. 137, 230 A.2d 289 (1967) should be extended to cases in which a private citizen challenges the validity of legislatively enacted comprehensive zoning?
>
> 2. Whether the considerations established as relevant to special aggrievement in *Ray v. Mayor & City Council of Baltimore*, 430 Md. 74, 59 A.3d 545 (2013) apply equally to cases in which a private citizen challenges the validity of legislatively enacted comprehensive zoning?
>
> 3. Whether Maryland law required Bill 44-11 to be consistent with the County GDP?[15]

---

(…continued)
§ 1-417. A number of the issues identified by the Committee were taken up and addressed the following year, during the 2013 Session of the Maryland General Assembly, by House Bill 1257, which was codified as Chapter 674 of the Acts of 2013.

[15] The writ identified five Questions. We consolidate Questions 3–5 into the question framed above because it represents the "essence" of each of those Questions. Questions 3–5 were originally expressed as follows:

(Continued…)

*Anne Arundel County v. Harwood Civic Association*, 438 Md. 739, 93 A.3d 288 (2014).

Of all the Petitioners, the County and Boone's Estates filed discrete and separate briefs.[16] The County advanced initially several arguments for why the Protestants did not enjoy property owner standing. The County proceeded then to discuss the Protestants' "alternative" argument that they were specially harmed "in a way different and distinct from the public at large." Boone's Estates' arguments echoed largely those of the County, with one notable exception[17]: Boone's Estates reiterated the arguments made to the Circuit Court regarding Ms. Harrison's allegations. It also referenced in a footnote

(…continued)

> 3. Whether Land Use Article § 1-417 (enacted in 2012) required that comprehensive zoning enacted by Anne Arundel County in 2011 to be consistent with the Anne Arundel County General Development Plan?

> 4. Whether the title to Chapter 674, Laws of Maryland 2013 retroactively required comprehensive zoning enacted by Anne Arundel County in 2011 to be consistent with the Anne Arundel County General Development Plan?

> 5. Whether Md. Code Ann., Art. 66B, § 1.04(f) required comprehensive zoning enacted by Anne Arundel County in 2011 to be consistent with the Anne Arundel County General Development Plan?

[16] The remaining Petitioners—Alva A. Trahan, Julie A. Hill, Michael D. Hill, Robert A. Rawlings, Millie J. Rawlings, Barbara Messenger, Elizabeth Rommel, and John Rommel—adopted by reference the briefs filed by the County and Boone's Estates. Because both briefs advance similar arguments, we refer to the arguments of both the County and Boone's Estates collectively as those of the Petitioners.

[17] Boone's Estates appears also to have conceded that the Wildlife Complainants alleged sufficiently special damages, such as demonstrating sufficiently property owner standing, to challenge Amendment 34 of Bill 44-11.

the Protestants' (pre-Second Amended Complaint) May 2013 Memorandum (wherein the Protestants disclaimed taxpayer standing), concluding with the following statement: "Boone's Estates here notes that [Ms. Harrison's] allegations are insufficient to give rise to taxpayer standing."[18]

The Protestants, in their responsive brief, argued that they enjoyed property owner standing, but did not argue that they enjoyed taxpayer standing, although they did refer tangentially to the latter doctrine several times in general discourse. Ironically, the Protestants discussed the public policy underpinnings of taxpayer standing and the necessity for standing doctrines that enable citizens to protect themselves from "legislative overreach" and the "*ultra vires* act of a legislature." The Protestants concluded their discussion of the policies behind taxpayer standing with a quotation from the taxpayer standing section of *Superblock I*, *see Superblock I*, 407 Md. at 266, 964 A.2d at 669, which they contextualized by saying: "The passage relates to the difficulties of pleading special aggrievement in a taxpayer standing case, but the difficulties faced by nearby landowners in a zoning case are no different." Later, they suggested that their Second Amended Complaint "alleges specific reasons why the value of their property and their enjoyment of [it] will suffer from the *ultra vires* act of the County Council."

So ends our excruciatingly exact recital of the procedural history of this case, which we set out at length as prelude to determining whether Respondents preserved their

---

[18] Boone's Estates reiterated this observation and argument in a footnote in its reply to the Respondents' brief.

ability to assert that they satisfied the requirements of taxpayer standing to maintain their suit.

## II.  TAXPAYER STANDING:
### HOW THE RESPONDENTS' SUIT FARES HERE

As we discussed in *Bell*, in order to establish eligibility to maintain a suit under the taxpayer standing doctrine, a plaintiff must allege "(1) that the complainant is a taxpayer; and (2) that the suit is brought, either expressly or implicitly, on behalf of all other taxpayers." *State Center, LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 547, 92 A.3d 400, 457 (2014).  "Once a complainant establishes eligibility to bring a suit, he, she, or it must allege . . . both a governmental action that is illegal or *ultra vires* and that the action may affect injuriously the taxpayer's property (meaning that it reasonably may result in a pecuniary loss to the taxpayer or an increase in taxes)." *Bell*, Slip Op. at 38; *see State Center*, 438 Md. at 540, 92 A.3d at 453 (quoting *Kendall v. Howard County*, 431 Md. 590, 605, 66 A.3d 684, 693 (2013) (quoting *Superblock I*, 407 Md. at 267, 964 A.2d at 669–70))).  Finally, "there must be a 'nexus' between the showing of potential pecuniary damage and the challenged act . . . which is true not only for the complainant, but also all similarly situated taxpayers." *Id.*, Slip Op. at 39.

Respondents here did not satisfy the requirements of the taxpayer standing doctrine on this record, or waived any arguments they may have had to that effect.  As noted above, Ms. Harrison—the only Respondent to make any arguable effort at

demonstrating taxpayer standing[19]—alleged the following in the Second Amended Complaint:

> Plaintiff Shirley Harrison owns and resides at 1037 Marlboro Road, Lothian, Maryland, adjacent to the property rezoned by Amendment 26 to Bill 44-11, as described below. She believes that her enjoyment of her property will be substantially reduced by the new intense residential development that would be made possible by this rezoning. She believes that development activity enabled by the rezoning would cause an increase in traffic, both during and after construction, causing driving to and from her residence to become more difficult. She also fears that her property taxes will increase due to the R5 zoning on the adjacent rezoned property.

Unlike the complainants in *Bell*, *see* Slip Op. at 46–48, Ms. Harrison alleged that her taxes would be increased, satisfying the requirement that she allege pecuniary loss. We shall assume for purposes of our analysis that she is, in fact, a taxpayer by virtue of her ownership of real property located at 1037 Marlboro Road, Lothian, Maryland.[20] We shall assume further that Ms. Harrison's allegations of "impermissible" spot zoning

---

[19] "Where one party has standing, we do not inquire typically as to whether another party on the same side also has standing." *Bell*, Slip Op. at 45; *see State Center, LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 550, 92 A.3d 400, 458 (quoting *Board of Supervisors of Elections v. Smallwood*, 327 Md. 220, 233 n.7, 608 A.2d 1222, 1228 n.7 (1992) (quoting *Board of License Commissioners v. Haberlin*, 320 Md. 399, 404, 578 A.2d 215, 217 (1990))).

[20] In *State Center*, 438 Md. at 550–52, 92 A.3d at 458–60, we considered whether the plaintiffs in that case were taxpayers. There, the plaintiffs were comprised of limited partnerships, limited liability corporations, and eight general Maryland corporations. *State Center*, 438 Md. at 550–51, 92 A.3d at 459. We "presumed" that the general Maryland corporations were taxpayers, although they did not allege specifically in their amended complaints that they paid taxes. *Id.* n.59, 92 A.3d at 459 n.59.

20

satisfy the requirement of alleging a governmental action that is illegal or *ultra vires*,[21] in light of the "lenien[cy]" with which that requirement has been applied in the past. *See State Center*, 438 Md. at 555–56, 92 A.3d at 462 ("This requirement has been applied leniently and seems rather easy to meet . . . ."). The added allegations in the Second Amended Complaint, however, even buttressed by our assumptions, do not bestow taxpayer standing on Ms. Harrison, as such an argument has been waived.[22] As noted above, after disclaiming standing as taxpayers in their May 2013 Memorandum, Respondents alleged nonetheless additional facts that, generally construed, could be a nod presumably in the direction of taxpayer standing. At no point before the Court of Special Appeals or before us, however, did any Respondent assert that he, she, or it enjoyed taxpayer standing or satisfied the requirements thereof. *See* Maryland Rules 8-131(b) and 8-504(a)(6). "[A]rguments not presented in a brief or not presented with particularity will not be considered on appeal." *Klauenberg v. State*, 355 Md. 528, 552, 735 A.2d 1061, 1074 (1999) (refusing to consider an argument when one statement to that effect was "lumped in" with another argument); *see Comptroller of Treas. v. Aerial*

---

[21] Respondents alleged that Amendment 26 (the amendment challenged specifically by Ms. Harrison) was "inconsistent with the GDP and is therefore in violation of Maryland Code Article 66B," that, in adopting Amendment 26, the County "acted arbitrarily and capriciously, in violation of Maryland law," that Amendment 26 "constitute[s] impermissible spot zoning," and that the zoning changes effected by Amendment 26 "[were] not guided by the GDP, and [are] therefore in violation of § 18-2-102 of the Anne Arundel County Code."

[22] Because Respondents waived the taxpayer standing argument, we need not consider whether Ms. Harrison alleged sufficiently that Respondents' suit was brought on behalf of all other taxpayers situated similarly, or if she alleged sufficiently a nexus between the challenged illegal or *ultra vires* act and pecuniary loss suffered by her.

*Prods., Inc.*, 210 Md. 627, 644–45, 124 A.2d 805, 814 (1956); *see also Mathis v. Hargrove*, 166 Md. App. 286, 318, 888 A.2d 377, 396 (2005); *Pool v. State*, 207 Md. App. 614, 633, 53 A.3d 479, 491 (2012). As the analysis in *Bell* demonstrates, it can come as no surprise to Respondents that the longstanding requirements of taxpayer standing apply to judicial challenges to comprehensive zoning actions. Their failure to grapple with that requirement dooms them in this case.

## III. CONCLUSION

The judgment of the trial court to dismiss Respondents' Second Amended Complaint was correct. Complainants must satisfy the requirements of taxpayer standing to challenge comprehensive zoning legislation. *Bell*, Slip Op. at 48. Because Respondents waived any argument they may have had that they enjoyed taxpayer standing, they cannot sustain their suit, which must be dismissed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.**

Circuit Court for Anne Arundel County
Case No.: 02-C-11-164569
Argued: January 13, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 39

September Term, 2014

ANNE ARUNDEL COUNTY, MARYLAND, et al.

v.

HARWOOD CIVIC ASSOCIATION, INC., et al.

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Dissenting Opinion by Adkins, J., which
Battaglia and McDonald, JJ., join.

Filed: April 21, 2015

I respectfully dissent for the reasons stated in my dissenting opinion in *Anne Arundel County, Maryland v. Bell*, ___ Md. ___, ___ A.3d ___ (2015) (No. 29, September Term, 2014, filed April 21, 2015).

Judge Battaglia and Judge McDonald authorize me to state that they join in the views expressed in this opinion.